UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THRESHOLD ENTERPRISES LTD., <br><br>  Plaintiff, <br><br> v. <br><br> LIFEFORCE DIGITAL INC., <br><br>  Defendant. | Case No. 22-cv-06483-PCP <br><br> **ORDER GRANTING MOTION TO DISMISS COUNTERCLAIM AND STRIKE AFFIRMATIVE DEFENSES** <br><br> Re: Dkt. No. 59 |

## BACKGROUND

In this lawsuit, plaintiff Threshold Enterprises Ltd. alleges that defendant Lifeforce Digital Inc. is infringing Threshold's LIFE FORCE trademark (registered in 2010) through the online marketing and sale of dietary and nutritional supplements that apply the mark. It its answer, Lifeforce asserts an affirmative defense ("Affirmative Defense 3") and related counterclaim alleging that Threshold abandoned its trademark in 2009 through a consent agreement with third party Doctors Signature Sales & Marketing International Corp. d/b/a/ Lifeforce International (LFI). Lifeforce also asserts as an affirmative defense ("Affirmative Defense 2") that Threshold engaged in fraud and has unclean hands. Lifeforce premises this affirmative defense on its claim that Threshold asserted exclusive rights in the mark when the mark was in truth shared with LFI and had been abandoned. Threshold now moves to dismiss the counterclaim and strike both affirmative defenses. For the reasons that follow, the Court grants Threshold's motion.

## LEGAL STANDARDS

The Federal Rules require a countercomplaint to include only a "short and plain statement of the [counter]claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a Rule 12(b)(6) motion contending that a countercomplaint fails to state a

counterclaim, the Court must "accept all factual allegations in the [counter]complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029 (9th Cir. 2009). Dismissal is required if the counterplaintiff fails to allege facts allowing the Court to "draw the reasonable inference that the [counter]defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). While legal conclusions "can provide the [counter]complaint's framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Id.* at 664.

Rule 12(f) allows the Court to "strike from a pleading an insufficient defense or a redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979). Unlike counterclaims, affirmative defenses are not subject to the heightened pleading requirements set forth in *Twombly* and *Iqbal*. *Kanaan v. Yaqub*, 2023 WL 8892982, at *2 (N.D. Cal. Dec. 26, 2023) (citing "both textual and pragmatic reasons for this conclusion"). Motions to strike are "generally not granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992). Ultimately, "whether to grant a motion to strike lies within the sound discretion of the district court." *Woods v. Google LLC*, 2018 WL 5292210, at *2 (N.D. Cal. Oct. 23, 2018).

## ANALYSIS

### I. Lifeforce Has Not Adequately Pleaded Abandonment of the Mark.

In both its counterclaim and Affirmative Defense 3, Lifeforce alleges that Threshold abandoned its trademark by signing a consent agreement with LFI in 2009. Dkt. No. 47-1, at 14–16. "Abandonment of a trademark, being in the nature of a forfeiture, must be strictly proved." *Prudential Ins. Co. of America v. Gibraltar Fin. Corp. of Calif.*, 694 F.2d 1150, 1156 (9th Cir. 1982). Lifeforce argues that it has adequately pleaded abandonment because Threshold's agreement with LFI is a "naked license," which occurs when a "licensor fails to exercise adequate quality control over the licensee." *Barcamerica Intern. USA Trust v. Tyfield Importers, Inc.*, 289 F.3d, 589, 596 (9th Cir. 2002). Because naked licensing is a kind of abandonment, the proponent

of a naked licensing theory must meet a "stringent standard of proof." *Id.*

On its face, Threshold's agreement with LFI is a consent agreement rather than a license. Indeed, the agreement explicitly states: "The Parties agree that this Agreement does not constitute a license of any trademark rights by either Party." Dkt. No. 47-1, at 23. As Lifeforce notes, however, the specific name given by parties to an agreement does not necessarily define the agreement's true legal character. *Universal City Studios, Inc. v. Nintendo Co.*, 578 F. Supp. 911, 929 (S.D.N.Y. 1983), *aff'd*, 746 F.2d 112 (2d Cir. 1984). The Court must instead consider the overall factual context to determine whether any particular agreement constitutes a naked license.[1] Here, neither the terms of the consent agreement nor the surrounding factual context plausibly suggest that Lifeforce can establish Threshold's abandonment of the mark.

As Threshold notes, a license typically requires some form of payment in exchange for the use of a trademark, while the consent agreement here involved no payment but rather a mere acknowledgement between LFI and Threshold of "mutual, peaceful coexistence" of the LIFE FORCE mark. Dkt. No. 47-1, at 21.

More fundamentally, the agreement does not purport to operate as an unrestricted authorization for either LFI or Threshold to use the mark in whatever way it might choose. Instead, the consent agreement sets forth the different channels of trade in which Threshold and LFI will sell their goods: The agreement contemplates that Threshold will distribute its products via "retail channels including … health food stores, grocery stores, doctors, healthcare professionals, and internet retailers," while LFI will distribute its products through "a direct sales membership, multi-level marketing channel" and "over the internet or world wide web, at tradeshows, at service based businesses including … beauty salon, gym, and / or healthcare professionals including … chiropractors, massage therapists, and doctors." *Id.* at 21–22. Lifeforce complains that those recitals are not binding, but nothing in the agreement explicitly authorizes

---

[1] Lifeforce contends that whether the consent agreement constitutes a naked license is a factual issue that cannot be resolved on a Rule 12(b)(6) motion. While Lifeforce is certainly correct that the Court cannot resolve disputed issues of fact when deciding such a motion, the Court can and must consider whether the non-conclusory facts that are pleaded in the countercomplaint or judicially noticeable plausibly suggest that the trademark holder has entered into a naked license.

3

either LFI or Threshold to use the mark in the other party's identified channels of trade. While binding limitations might be required in an agreement that would otherwise provide the license recipient with a complete defense to any future claim of infringement by the trademark holder, *see, e.g.*, *FreecycleSunnyvale v. Freecycle Network, Inc.*, 2008 WL 11461791, at *11 (N.D. Cal. Mar. 13, 2008), *aff'd*, 626 F.3d 509 (9th Cir. 2010) ("Defendant abandoned its marks when it allowed Plaintiff and other groups to use the term and logo without maintaining any quality control over the services those groups provided."), the agreement here does not purport to provide either party with such a right.

Further, when the parties entered into the consent agreement, only LFI had obtained a trademark registration for LIFE FORCE. Dkt. No. 59, at 8. Threshold obtained its separate trademark registration for the mark one year after the parties entered into the consent agreement. Under these circumstances, counterdefendant Threshold was arguably a mere *recipient* of consent. Accordingly, even accepting Lifeforce's construction of the agreement, the party that engaged in naked licensing would have been LFI, not Threshold.

For all of these reasons, Lifeforce has failed to plead facts plausibly establishing that the consent agreement constituted a naked license by Threshold authorizing LFI's unrestricted use of the mark.

Lifeforce argues that even if the consent agreement is not a naked license, it constitutes a naked consent. *See In re Mastic Inc.*, 829 F.2d 1114, 1116 (Fed. Cir. 1987) (holding that a trademark applicant's prior consent agreement was naked in affirming the USPTO's decision to deny trademark registration). There are two problems with Lifeforce's reliance on this theory.

First, naked consent is a trademark prosecution principle used in evaluating the likelihood of confusion in the marketplace not a theory of trademark abandonment, and Lifeforce has not cited any precedent applying the naked consent doctrine in the context of trademark abandonment.

Second, even if the naked consent principle could be used to establish abandonment, the terms of the 2009 consent agreement and its surrounding circumstances do not plausibly support Lifeforce's claim of naked consent engendering public confusion. In assessing whether a consent agreement is naked, a court must look at all of the surrounding circumstances "to determine if the

4

consent reflects the reality of no likelihood of confusion in the marketplace, or if the parties struck a bargain that may be beneficial to their own interests, regardless of confusion to the public." *Mastic*, 829 F.2d at 1116–17. As noted already, the agreement here lists the separate marketing channels within which each party will operate and explicitly notes the parties' agreement "that there has not been any actual confusion during the long-standing peaceful coexistence of 18 years, and that any future likelihood of confusion between each's use of LIFE FORCE marks is not likely." Dkt. No. 47-1, at 22. As Threshold notes, the USPTO granted its trademark registration in 2010 notwithstanding the 2009 consent agreement with LFI, thereby necessarily concluding that the parties' uses of the mark under the consent agreement would *not* result in confusion in the marketplace. Dkt. No. 59, at 17. Although Lifeforce pleads that consumer confusion is in fact likely, it does so in an entirely conclusory fashion without identifying any specific facts that would support that assertion. Under these circumstances, Lifeforce's allegation of consumer confusion is not plausible.

Accordingly, Lifeforce's naked consent theory also does not support its allegation that Threshold abandoned the mark at issue here. Because Lifeforce has pleaded neither abandonment through naked licensing nor abandonment through naked consent, the Court grants Threshold's motion to dismiss the counterclaim and strike Affirmative Defense 3.[2] Because the sole basis for the counterclaim and affirmative defense is Threshold's agreement with LFI and the agreement on its face does not support Lifeforce's claim of abandonment, dismissal is without leave to amend.

## II. The Facts Pleaded by Lifeforce Do Not State a Valid Unclean Hands Defense.

Threshold also requests that the Court strike Lifeforce's Affirmative Defense 2, which alleges that Threshold is estopped from seeking relief due to fraud and unclean hands. Lifeforce premises this defense on its assertion that Lifeforce inaccurately asserted exclusive rights in the LIFE FORCE mark when in fact the consent agreement permitted LFI to use the mark as well and

---

[2] Although the plausibility standard does not apply to Lifeforce's affirmative defenses, the Court can still consider, on a motion to strike, whether the facts that have been pleaded in support of an affirmative defense state a valid defense. For the reasons noted above, the facts pleaded by Lifeforce in support of Affirmative Defense 3 do not state a valid claim of abandonment through either naked licensing or naked consent.

constituted abandonment of the mark.

As noted already, the standard for pleading affirmative defenses in this Court is less stringent than the standard for pleading counterclaims. Had Lifeforce simply asserted the affirmative defense of "unclean hands" and "fraud" without more detail, Affirmative Defense 2 would be properly pleaded. But Lifeforce has pleaded itself out of Affirmative Defense 2 by including the specific basis for that defense—namely, its theory that Threshold engaged in fraud and has unclean hands because it asserted exclusive rights in its mark despite having abandoned the mark in 2009. For the reasons already noted, Lifeforce's theory of abandonment lacks merit.

The Court therefore grants Threshold's motion to strike Affirmative Defense 2. Because the Court has already granted Lifeforce one opportunity to amend its answer, dismissal of this defense is also without leave to amend.

## CONCLUSION

For the foregoing reasons, the Court grants without leave to amend Threshold's motion to dismiss Lifeforce's counterclaim and to strike Affirmative Defenses 2 and 3.

**IT IS SO ORDERED.**

Dated: April 15, 2024

P. Casey Pitts
United States District Judge