# Exhibit B

CONFIDENTIAL - ATTORNEY'S EYES ONLY

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                        ---oOo---
 4   THRESHOLD ENTERPRISES LTD, a
     Delaware corporation,
 5
              Plaintiff,
 6
     vs.                            No. 5:22-cv-06483-PCP
 7
     LIFEFORCE DIGITAL INC., a
 8   Delaware corporation,
 9            Defendant.
     _____/
10
11
12
13          Confidential - Attorney's Eyes Only
14             DEPOSITION OF BARRY SUGARMAN
15
16
17
18             Taken before Kaylin Hoag
19                  CSR No. 14267
20               December 14, 2023
21
22
23
24
25
```

Page 2

I N D E X
                                                    PAGE
EXAMINATION BY MR. SPATZ            6
EXAMINATION BY MR. AGARWAL        193


      E X H I B I T S
                                                    PAGE
DEFENDANTS'
Exhibit 218   Lifeforce Digital Inc.'s
              Notice of Deposition of
              Threshold Enterprises LTD      9
Exhibit 219   Literature for Life Force
              Multiple                      40
Exhibit 220   Literature for Life Force
              Multiple                      43
Exhibit 221   Literature for Life Force
              Multiple                      46
Exhibit 222   Literature for Life Force
              Multiple                      47
Exhibit 223   shopsourcenaturals.com
              search page depicting
              7-Keto DHEA Metabolite        86
Exhibit 224   Threshold Enterprises
              Selling & Marketing Expenses 104
Exhibit 225   Threshold Enterprises
              financial report 2016-2023   106
Exhibit 226   Revenue report for the
              Life Force product line
              2204-2023                    107

Page 3

Exhibit 227   Financial report showing
              yearly revenue for the Life
              Force product line and
              monthly revenues for 2021,
              2022 and year to date 2023   109
Exhibit 228   Threshold Enterprises LTD's
              Amended Response to Lifeforce
              Digital, Inc.'s First Set
              of Interrogatories to Plaintiff
              Threshold Enterprises LTD    112
Exhibit 229   E-mail correspondence from
              Barry Sugarman to
              Wg@lifeforce.net             125
Exhibit 230   E-mail correspondence between
              Monty Agarwal and David Hurley 130
Exhibit 231   E-mail correspondence between
              Monty Agarwal and David Hurley 132
Exhibit 232   Coexistence and Consent to Use
              and Register Agreement       143
Exhibit 233   Document reflecting the top
              50 Source Natural products
              from 2011 to 2022            161
Exhibit 234   Trademark Coexistence
              Agreement between
              Threshold Enterprises Ltd. and
              Life Force Wellness LLC      164
Exhibit 235   September 17, 2021 letter
              to Justin Crayton,
              Legalzoom Legal Services,
              from Rachel Chanin           168
Exhibit 236   Trademark Agreement between
              Threshold Enterprises Ltd. and
              Astec, Ltd.                  170
Exhibit 237   Trademark Agreement between
              Threshold Enterprises Ltd. and
              Portals Pharma, Inc.         171

Page 4

Exhibit 238   Trademark Agreement between
              Threshold Enterprises, Ltd.
              and Sterling-Rice Group      174
Exhibit 239   Coexistence Agreement between
              Threshold Enterprises Ltd.
              and LifeForce Devices Inc.   178
Exhibit 240   Agreement between Threshold
              Enterprises Ltd. and Eastern
              Currents Distributing, Ltd.  180
Exhibit 241   Agreement between Threshold
              Enterprises Ltd. and Infinite
              Labs, LLC                    183
Exhibit 242   Agreement between Threshold
              Enterprises Ltd. and Tribravus
              Enterprises, LLC             183
Exhibit 243   Agreement between Threshold
              Enterprises Ltd. and
              Michael L. Miller            187
Exhibit 244   Agreement between Threshold
              Enterprises Ltd. and
              Beata Seubert                190
Exhibit 245   Agreement between Threshold
              Enterprises Ltd. and
              Onnit Labs                   190
Exhibit 246   Agreement between Threshold
              Enterprises Ltd. and Alltech 191
Exhibit 247   Agreement between Threshold
              Enterprises Ltd. and
              Metin Deniz                  191
Exhibit 248   Agreement between Threshold
              Enterprises Ltd. and
              New Chapter                  192

Page 5

        DEPOSITION OF BARRY SUGARMAN


        BE IT REMEMBERED, that pursuant to Notice, and on
the 14th day of December 2023, commencing at the hour of
9:07 a.m., in the offices of Regus, 2033 Gateway
Boulevard, 6th Floor, San Jose, California, before me,
KAYLIN HOAG, a Certified Shorthand Reporter, State of
California, personally appeared BARRY SUGARMAN, produced
as a witness in said action, and being by me first duly
sworn, was thereupon examined as a witness in said cause.
            ---oOo---
APPEARANCES
For the Plaintiff:
        MONTY AGARWAL
        RACHEL CHANIN
        Vallejo Antolin Agarwal Kanter LLP
        3021 Citrus Circle, Suite 220
        Walnut Creek, California 94598
        (925) 951-6970
        magarwal@vaakllp.com
For the Defendant:
        GEORGE SPATZ (pro hac vice)
        MANON BURNS
        Amin Talati Wasserman, LLP
        549 W Randolph Street, Suite 400
        Chicago, Illinois 60661
        (312) 466-1033
        gspatz@amintalati.com
        manon@amintalati.com

Page 6

1  BARRY SUGARMAN
2  sworn as a witness
3  testified as follows:
4
5  EXAMINATION BY MR. SPATZ:
6     Q.  Could you please state and spell your name for
7  the record?
8     A.  Barry Sugarman, B-A-R-R-Y S-U-G-A-R-M-A-N.
9     Q.  Mr. Sugarman, have you been deposed before?
10    A.  Yes.
11    Q.  Okay.  How many times?
12    A.  More than five.
13    Q.  More than five.  What was the most recent
14 deposition?
15    A.  Boy, I'm not sure.  It's been a little while.
16 It was a litigation for Threshold I think.
17    Q.  Do you know what the subject matter of the
18 litigation was?
19    A.  Yeah.  It was a -- it was a lawsuit, a personal
20 injury lawsuit for a particular product, Chlorella.
21 Someone was alleging injury and they deposed a group of
22 us.
23    Q.  Have the approximately more than five
24 depositions all been in connection with Threshold?
25    A.  No.

Page 7

1     Q.  How many have been in connection with Threshold?
2     A.  It's been awhile.  Maybe three or four.
3     Q.  Have you been deposed in any trademark cases on
4  behalf of Threshold?
5     A.  Yes.  I believe -- I believe there was a
6  deposition in one case.  I believe so.  It's been quite
7  awhile.
8     Q.  Do you remember what the trademark or the
9  product was in that case?
10    A.  I think it was the Life Force V case.
11    Q.  Okay.  So since it's been awhile, I'll go
12 through the ground rules of depositions again so we're on
13 the same page.
14         You know, first, the conversation here today is
15 being transcribed.  So we have to make sure we don't
16 speak over each other.  So I'll do my best and make sure
17 I let you finish before I speak, and if you could let me
18 finish before you speak, I'd appreciate that.  Okay?
19    A.  Yes.
20    Q.  Okay.  The other is, we need all verbal
21 responses.  So nodding of the head, shakes of the head
22 doesn't translate.  So if you can give yes or no answers,
23 that would be appreciated.  Okay?
24    A.  Yes.
25    Q.  At time to time your lawyer may object.  Unless

Page 8

1  your lawyer instructs you not to answer a question after
2  that objection, you still need to give a response.
3  Understood?
4     A.  Yes.
5     Q.  Okay.  And then is there any reason you would
6  not be able to give truthful testimony today?  Not
7  feeling well, medications, anything that would prohibit
8  you from giving truthful testimony?
9     A.  No.  I feel fine.
10    Q.  Okay.  And then finally, if you need a break,
11 just let me know.  If you, you know, need to use the
12 restroom, just stand up stretch your legs, anything, let
13 me know.  I'll finish whatever question or line of
14 questions I'm on and we can take a break.  Okay?
15    A.  Yes.
16    Q.  Without getting into the substance of any
17 conversations with your attorneys, what did you do to
18 prepare for your deposition today?
19    A.  I went over some records that I have and some
20 briefing papers from the lawyers.
21    Q.  Do you recall any specific documents you
22 referenced?
23    A.  Yes.  There were specific documents prepared,
24 and I looked at those.  And also I looked at the
25 interrogatory responses and the documents that were given

Page 9

1  to me to prepare.
2     Q.  Did you speak with anyone else at Threshold
3  specifically in preparation for the deposition?
4     A.  I spoke with my two attorneys, and I did meet
5  with Mr. Goldberg yesterday with the attorney.
6     Q.  Did you have any conversations with Mr. Goldberg
7  where the attorney wasn't present?
8     A.  No.  Not regarding the case, no.
9     Q.  You understand the testimony you're giving today
10 is in connection with a lawsuit that Threshold
11 Enterprises has brought against Lifeforce Digital, Inc.
12 related to alleged infringement of the Life Force
13 trademark?
14    A.  That's my understanding.
15         (Defendants' Exhibit No. 218 marked
16         for Identification.)
17 BY MR. SPATZ:
18    Q.  Mr. Sugarman, I've handed you what's been marked
19 as Exhibit 218.  This is a notice of deposition for
20 Threshold Enterprises.  If you turn to page 2, there's a
21 number of topics listed for examination.  Are you
22 familiar with this list of topics?
23    A.  Yes.
24    Q.  Okay.  And do you understand that you've been
25 designated as the corporate representative to testify on

Page 10

1  behalf of Threshold with respect to these topics?
2     A.  Yes.
3        MR. AGARWAL:  Counsel, I just note that we did
4  -- we are offering Mr. Sugarman for all topics except for
5  one topic which relates to -- which has been split in
6  time, and that is the topic number...
7        MR. SPATZ:  Yeah, I understand.  For the oral
8  agreement with Life Force International around 1996.
9        MR. AGARWAL:  And so he will be designee for
10 essentially kind of...
11       MR. SPATZ:  Everything but that.
12       MR. AGARWAL:  Yeah.
13 BY MR. SPATZ:
14    Q.  Can you give me a brief background of your
15 education?  What's the highest degree you've achieved?
16    A.  I have a bachelor of science in engineering from
17 Cal State Northridge.
18    Q.  And when did you get your BS?
19    A.  1982.
20    Q.  And after you got your BS in engineering, what
21 did you do for employment or did you go onto any other
22 education?
23    A.  I had my own business.
24    Q.  So right around 1982 you started your own
25 business?

Page 11

1     A.  No.  Started in November of '78.
2     Q.  Okay.  And what was that nature of that
3  business?
4     A.  My father and I owned a pharmaceutical,
5  manufacturing, and distribution company.
6     Q.  What's the name of the company?
7     A.  The manufacturing company was Liqui-Farm, Inc.,
8  the distribution company was United States Trading Corp.,
9  and the rep company was Chem-Farm Limited.
10    Q.  And what were your responsibilities at the
11 pharmaceutical company?
12    A.  I was the VP of marketing and sales at the
13 distribution company, I was the president of the
14 manufacturing company and had numerous responsibilities
15 in both.
16    Q.  And then, you know, a couple years later you
17 started at Cal State Northridge.  Were you full-time then
18 or did you split between working and going to school?
19    A.  The latter; split between working and school.
20    Q.  Okay.  And how long did you work at the
21 pharmaceutical companies?
22    A.  From '78 to the early 1990s, roughly '92 or '-3.
23    Q.  And where did you go after -- in 1992/1993?
24    A.  I started my Diverstech business which started
25 off in distribution of goods to government agencies and

Page 12

1  also then went into consulting.
2     Q.  And how long were you with Diverstech?
3     A.  It's still.
4     Q.  Still?
5     A.  Today.
6     Q.  And you do your consulting through Diverstech?
7     A.  Yes.
8     Q.  And are you a consultant to Threshold through
9  Diverstech?
10    A.  Technically, yes, but I'm considered an
11 executive there.  That's my primary client.
12    Q.  Do you dedicate full-time to Threshold?
13    A.  Yes.  It's -- yes.  Many hours.
14    Q.  And then you're a 1099 independent contractor or
15 do you have an employee relationship with Threshold?
16    A.  1099.
17    Q.  And when did you start consulting for Threshold?
18    A.  In 1994, late 1994.
19    Q.  And what was the nature of your initial
20 consulting with Threshold?
21    A.  Initially I was brought in to assist with
22 building a quality control department, testing, and
23 building a lab and helping in manufacturing after that.
24 And then I went on to R and D and some of the other
25 areas.

Page 13

1     Q.  Do you have a specific scope of responsibility
2  at Threshold or do they give you ad hoc projects or
3  initiatives?
4     A.  Both.
5     Q.  And you know, currently what is your scope of
6  responsibility?
7     A.  Regulatory affairs and corporate matters and
8  technical matters.
9     Q.  Who do you report to at Threshold?
10    A.  The president and owner.
11    Q.  That's Ira Goldberg?
12    A.  Correct.
13    Q.  Do you have anybody that reports to you at
14 Threshold?
15    A.  Well, many people, many departments.  I'm the --
16 we have an executive team, and I'm on the executive team.
17 So the people who are below the executive team all report
18 up to.  So there's -- my primary departments that I'm
19 involved with are quality, R and D, legal regulatory.
20 Those are the three primary ones.  And sales and
21 marketing.
22       So I'm on a team.  The executive team or
23 executive team members like myself participate in
24 meetings with those departments.
25    Q.  And who are the people that are on the executive

CONFIDENTIAL - ATTORNEY'S EYES ONLY

Page 14

1 team?
2     A. Myself, Ira Goldberg, Brian Cayton, and then
3 depending on -- there could be other team members. So
4 the sales executive team has some of the managers on
5 that. But those are the main -- myself, Brian Cayton,
6 Ira Goldberg are the main. Carl Weissman is the chief of
7 operations. Those are the main executive team members.
8 And Ira Goldberg.
9     Q. Do you have a title at Threshold?
10    A. It's regulatory affairs. Regulatory, corporate,
11 and technical affairs is what I use.
12    Q. Are you familiar with the title of director of
13 corporate development?
14    A. That's Brian's title.
15    Q. Oh, that's Brian's title. Got it.
16       Have you been referred to as a technical
17 consultant to the company?
18    A. Could you repeat the question?
19    Q. I said, do they refer to you as a technical
20 consultant to the company?
21    A. That's part of my duties.
22    Q. As part of the lawsuit, counsel produced
23 documents to us. Were you involved in the collection of
24 documents in connection with this lawsuit?
25    A. Yes.

Page 15

1     Q. Okay. And what did you do to search for
2 documents?
3     A. Well, many things. I did -- I contacted
4 departments who I know have those documents. I searched
5 my own records. The lawyers had records. I physically
6 looked in boxes for records and file cabinets in my
7 office at Threshold. I -- for sales figures I contacted
8 Brian and direct with the sales data team.
9     Q. And does Threshold regularly use e-mail for
10 communication?
11    A. Yes.
12    Q. And did you search e-mail for documents?
13    A. I did.
14    Q. Okay. And does Threshold have any other
15 channels that it uses for communication, for instance, a
16 chat or a Slack type functions?
17    A. We use Teams, but it's only recent and most
18 people don't use chat for that. They use e-mail at
19 Threshold primarily for documents and things.
20    Q. Okay. Can you tell me just in general terms a
21 little bit of the scope of Threshold's businesses, what's
22 its primary activities?
23    A. Threshold is a manufacturer and a distributor.
24 It manufacturers dietary supplements, primarily under two
25 brands, Source Naturals and Planetary Herbals. It has a

Page 16

1 doctors and a pharmacy brand, Horizon Naturals and
2 Genexis Nutraceutics. Horizon was a pharmacy brand and
3 Genexis is a doctor's brand. Those two brands are
4 incidental. They're on a per special order type basis
5 now. They're not really actively marketed.
6     Q. So the two primary product lines that Threshold
7 puts out is the Source Naturals branded product line and
8 the Planetary Herbals branded product line?
9     A. Correct.
10    Q. And then I understand Threshold is a
11 distribution business as well?
12    A. Yes.
13    Q. Okay. And can you describe that in a general
14 level, please?
15    A. They have 300, approximately 300 brands of other
16 manufacturers that they sell on a wholesale basis to
17 customers, to retail customers.
18    Q. Do they sell any of those third-party brands
19 directly to consumers?
20    A. No.
21    Q. And speaking of the Source Naturals brand of
22 product, what's the scope of Source Naturals products
23 that Threshold puts out?
24    A. We have quite a number of products, hundreds of
25 products. Over -- over -- it was up to maybe a thousand

Page 17

1 different products. Now it's cut back. It's somewhere
2 north of 500 products.
3     Q. Yeah, I saw a reference to 750 products in 25
4 health categories. Does that sound about right?
5     A. That's about right, yeah.
6     Q. And what health categories does Threshold target
7 with the Source Natural branded products?
8     A. Well, many, many, many categories. Immunity is
9 one primary one, immune health; and there's many
10 multivitamins, individual vitamins, individual
11 supplements for specific uses, amino acids, men's health,
12 women's health, sexual health. Numerous categories.
13    Q. I'd like to refer you to an exhibit that's been
14 marked as Exhibit 201.
15    A. Okay.
16    Q. Are you familiar with this document as a news
17 and product letter from April 2022?
18    A. I don't know if I've seen this specific one
19 recently, but it's a Threshold newsletter. We send
20 newsletters out monthly.
21    Q. And who do the newsletters go to?
22    A. These -- this is a wholesale newsletter. It
23 would go to retailers who are reselling our product.
24    Q. If I can direct your attention to page 14 of the
25 newsletter. It has the Bates number Threshold 16.

Page 154

1  moving into any additional channels as a result of this
2  agreement?
3      MR. AGARWAL: Object to the form of the
4  question.
5      THE WITNESS: I believe I answered that already
6  but I'll answer it again. To the extent that this
7  agreement provides restrictions related to the
8  interference of the use or the confusion of the parties
9  to the agreement that we have before us, that would be a
10 restriction. It could present itself in different ways.
11     In our 20 years prior to this agreement, in our
12 I guess 14 years subsequent to this agreement, we have
13 not experienced a complaint from Doctor Signature or Life
14 Force International or directly experienced any
15 allegation of interference or confusion.
16 BY MR. SPATZ:
17   Q. What would interfere with Life Force
18 International's use?
19     MR. AGARWAL: Object to the form of the
20 question.
21     THE WITNESS: Something that would interfere
22 with or cause a complaint or a confusion by one of the
23 parties to this agreement.
24 BY MR. SPATZ:
25   Q. So it's your understanding that interference

Page 155

1  would require a complaint or confusion regarding one of
2  the parties' use of the mark?
3    A. No. You mischaracterize your own question. You
4  asked me for an example. I gave you one example. It
5  could be -- there could be numerous ways that it could
6  present itself. With the Life Force V case they came to
7  a trade show that we were at and we saw them and there
8  were complaints. So there could be any number of ways in
9  any number of channels. That was just an example. You
10 asked for an example.
11   Q. And in that instance you just described with
12 Life Force V, you believe that that caused confusion,
13 them attending a trade show?
14   A. I know that it did.
15   Q. Okay. Just so I'm clear, I believe you
16 testified to this, but let me ask it. Are you aware of
17 any instances of confusion between Threshold and Life
18 Force International?
19   A. No.
20   Q. Are you aware of any confusion between
21 Threshold's products and Life Force International's
22 products?
23   A. No.
24   Q. Are you aware of any confusion between
25 Threshold's commercial activities and Life Force

Page 156

1  International's commercial activities?
2      MR. AGARWAL: Object to the form of the
3  question.
4      But you can answer. But I don't know what
5  commercial activities means, but go ahead.
6      THE WITNESS: I haven't spoken to Life Force
7  International. I'm not aware of every single activity
8  that they undertake, but I've never seen a complaint from
9  them or any of our salespeople or marketing people
10 regarding something that they marketed with respect to
11 Life Force.
12 BY MR. SPATZ:
13   Q. And in a similar area, are you aware of any
14 confusion from end customers between Threshold activities
15 and Life Force International's activities?
16   A. Could you repeat the question, please?
17   Q. Certainly. I think you referenced your sales
18 reps, your marketing people. I'm asking, specifically
19 with respect to end consumers, are you aware of any
20 confusion from end consumers regarding Threshold's
21 commercial activities and Life Force International's
22 commercial activities?
23   A. I'm not aware of any specific complaint, no.
24   Q. Okay.
25   A. But I'll say again, I'm not aware of all Life

Page 157

1  Force International activities. They may have activities
2  that I'm not aware of. I'm only speaking with regard to
3  Life Force.
4    Q. Okay. Similarly, are you aware of any instances
5  of confusion between Threshold and the defendant,
6  Lifeforce Digital, from end consumers?
7    A. I haven't had any specific complaints, but I've
8  gone on Google myself in the last few days and I put in
9  Life Force in various different presentations and I've
10 noticed that the defendant's images, website, and
11 information come up right alongside ours.
12   Q. Okay. Are you aware of any confusion from
13 consumers regarding Threshold and Lifeforce Digital?
14   A. We don't speak to consumers directly unless they
15 call in. So there may be confusion. I would say there's
16 a likelihood of confusion based on what I'm seeing. I
17 haven't --
18   Q. Are you aware of any actual confusion, instances
19 of actual confusion between Threshold and Lifeforce
20 Digital?
21   A. I personally have never seen a complaint like
22 that, but I think it's highly likely that there would be
23 consumer confusion because of what I saw just as recently
24 as yesterday or the day before.
25   Q. I'm sorry. I'm not asking about likely

CONFIDENTIAL - ATTORNEY'S EYES ONLY

Page 194

[redacted]

3   Q. Okay. And in the -- we also looked at
4 Exhibit 232, which you will remember is the agreement
5 between Threshold and Doctors Signature, also that does
6 business as Life Force International. When you -- when
7 Threshold entered into this agreement, how many years of
8 actual real world experience did it have coexisting with
9 Doctors Signature?
10   A. 20 years.
11   MR. AGARWAL: Thank you. I have no further
12 questions.
13   MR. SPATZ: I have no further questions.
14   THE REPORTER: Monty, would you like a copy?
15   MR. AGARWAL: I would. Standard delivery would
16 be fine.
17   MR. SPATZ: Same with us.
18   (Whereupon, the deposition concluded at 4:13
19   p.m.)
20
21
22
23
24
25

Page 196

1 STATE OF CALIFORNIA  )
2                      )
3 COUNTY OF ALAMEDA    )
4
5     I, KAYLIN HOAG, a Shorthand Reporter, State of
6 California, do hereby certify:
7     That BARRY SUGARMAN, in the foregoing deposition
8 named, was present and by me sworn as a witness in the
9 above-entitled action at the time and place therein
10 specified;
11     That said deposition was taken before me at said
12 time and place, and was taken down in shorthand by me, a
13 Certified Shorthand Reporter of the State of California,
14 and was thereafter transcribed into typewriting, and that
15 the foregoing transcript constitutes a full, true and
16 correct report of said deposition and of the proceedings
17 that took place;
18     That before completion of the proceedings,
19 review of the transcript [ ] was [X] was not requested.
20     IN WITNESS WHEREOF, I have hereunder subscribed
21 my hand                              024.
22
23
         KAYLIN HOAG, CSR NO. 14267
24       State of California
25